# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KATINA M. MANSFIELD | : CIVIL ACTION |
|---|---|
| | : |
| v. | : NO. 16-2003 |
| | : |
| CAROLYN W. COLVIN | : |

## MEMORANDUM

**KEARNEY, J.**                                            **September 22, 2017**

Katina M. Mansfield asks we review and reverse the Social Security Administration Commissioner's final decision denying her application for Social Security Disability Insurance and Supplemental Security Income benefits. Ms. Mansfield challenges Administrative Law Judge Christine McCafferty's September 26, 2014 decision finding Ms. Mansfield is not disabled. Ms. Mansfield argues ALJ McCafferty improperly weighed the testimony and expert medical opinions of her treating physician Dr. Robert Liebenberg and consultative examiner Dr. Harris Ross. Ms. Mansfield also argues ALJ McCafferty improperly rejected her subjective testimony. ALJ McCafferty fulsomely reviewed the testimony with reasons as to why she found some evidence more persuasive than other evidence and described and addressed conflicts in medical evidence. The ALJ also fully described her reasons for rejecting Ms. Mansfield's testimony. Her September 26, 2014 decision is based on substantial evidence requiring we enter the accompanying Order denying Ms. Mansfield's Petition for Review and dismiss her Complaint.

## I.    Background

Katina M. Mansfield is a 44-year-old woman with a high school education.[1] She worked as a cashier/checker at a grocery store and as a Certified Nursing Assistant.[2] Ms. Mansfield has not sought employment since 2006. She claims being unable to work because of her physical condition.[3] Ms. Mansfield's alleged medical maladies include degenerative disk disease of the lumbar spine with radiculopathy down the left leg, degenerative joint disease of the right knee, morbid obesity, residual effects of multiple rib fractures, depressive disorder, anxiety disorder, and posttraumatic stress disorder.[4] Starting in August 2007, Ms. Mansfield began treating with Dr. Robert Liebenberg, an orthopedic specialist for her knee and back pain.[5] Since beginning treatment, Ms. Mansfield has seen numerous specialists and frequently visits her doctors.[6]

Ms. Mansfield protectively filed applications for Social Security Disability Insurance and Supplemental Security Income benefits on August 1, 2008.[7] The Social Security Administration denied her first applications on March 7, 2009.[8] Ms. Mansfield then requested a hearing. After a September 17, 2010 hearing, ALJ McCafferty issued an October 25, 2010 decision finding Ms. Mansfield not disabled.[9] The Appeals Council affirmed ALJ McCafferty's decision, entering the final decision. Ms. Mansfield then sought this Court's review.[10] On August 22, 2013, the Honorable William H. Yohn adopted the Report and Recommendation of Magistrate Judge David R. Strawbridge to vacate the Commissioner's final decision and remand to re-evaluate the opinion given by Ms. Mansfield's treating physician Dr. Robert Liebenberg.[11]

While challenging the ALJ's 2010 decision, Ms. Mansfield filed a second set of applications for benefits on December 31, 2010 and February 8, 2011 respectively.[12] On July 26, 2011, the Social Security Administration once again issued an initial denial for the applications.

2

Ms. Mansfield then appeared before another ALJ for a second hearing who similarly found her not disabled.[13] Ms. Mansfield filed a timely appeal to the Appeals Council.[14]

While the Appeals Council considered Ms. Mansfield's second appeal, Judge Yohn remanded her original application. The Appeals Council consolidated both applications for further proceedings.[15] Following a third hearing, ALJ McCafferty issued her September 26, 2014 decision finding Ms. Mansfield not disabled.[16] ALJ McCafferty found although Ms. Mansfield is unable to return to her previous work, she is capable of performing other jobs present in the economy, matching the testimony of the vocational expert at the hearing.[17] The Appeals Council denied her exceptions, claiming a lack of jurisdiction over the appeal.[18] ALJ McCafferty's September 26, 2014 decision finding Ms. Mansfield is not disabled became the final decision of the Commissioner.

## II. Analysis

Ms. Mansfield timely filed a request for review of the denial on three grounds detailed in ALJ McCafferty's findings: 1) treating physician Dr. Liebenberg's opinion warranted little weight; 2) consulting doctor, Dr. Ross' opinion warranted little weight; and 3) Ms. Mansfield's subjective testimony as to her pain levels as not credible. We overrule Ms. Mansfield's objections and affirm the Commissioner's findings based on substantial evidence detailed in her September 26, 2014 decision.

Our review of the ALJ's decision is deferential, and an ALJ's findings of fact are conclusive if supported by substantial evidence.[19] Our review is limited to determining whether "substantial evidence" supports the decision.[20] Substantial evidence is defined as more than a mere scintilla of evidence but less than a preponderance of the evidence.[21] Substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a

3

reasonable mind might accept as adequate to support a conclusion."[22]  When reviewing ALJ McCafferty's September 26, 2014 decision, we must rely on the record presented and the administrative proceedings and pleadings.[23]  If ALJ McCafferty's decision is supported by substantial evidence, we must affirm her decision, regardless of whether we would have decided the case differently.[24]  We may not independently weigh the evidence or substitute our own conclusions.[25]

In examining a challenge to the Commissioner's initial decision denying benefits, the ALJ must determine whether the claimant is disabled.  Title II of the Social Security Act ("Act") affords insurance benefits to "persons who have contributed to the program who suffer from a physical or mental disability."[26]  A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[27]  A claimant is only disabled if their impairments are severe enough to make their previous work impossible or preclude any other kind of gainful work existing in the national economy.[28]

The Commissioner must perform a five-step analysis to determine whether a person is disabled.[29]  If the Commissioner finds disability or non-disability at any point during the analysis, the Commissioner will not review the claim further.[30]  Under step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity.[31]  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two and is required to determine whether the claimant is suffering from a severe impairment or severe combination of impairments.[32]  Under step three, if the claimant's impairments are severe, the Commissioner compares the impairments to a list of impairments presumed severe enough to

4

preclude gainful employment.[33] If the claimant's impairments or its equivalent matches a listed impairment, the claimant is presumed disabled.[34] If the claimant's impairments do not match impairments on the list, the Commissioner proceeds to step four, where the Commissioner determines the claimant's residual functional capacity ("RFC").[35] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[36] In step five, if the claimant is unable to return to past work, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]."[37]

## A. ALJ McCafferty properly afforded little weight to Ms. Mansfield's treating physician's opinion.

Ms. Mansfield objects to ALJ McCafferty affording limited weight to the medical opinion of her treating physician Dr. Liebenberg. Ms. Mansfield argues Dr. Liebenberg's opinion is entitled to controlling weight based upon his lengthy history of treating Ms. Mansfield and lack of contrary medical evidence. For example, Ms. Mansfield claims ALJ McCafferty gave improper weight to Dr. Liebenberg's October 18, 2010 medical source statement, opining Ms. Mansfield is limited to sitting for short periods of time, can walk less than one city block, cannot lift more than 20 pounds occasionally, must take unscheduled work breaks every hour, would miss more than three work days per month, and must elevate her right leg every hour.[38]

A treating physician's opinion is entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the case record."[39] A treating physician's opinion may be totally rejected "on the basis of contradictory medical evidence,"[40] or "insufficient clinical data,"[41] but the ALJ may afford the treating physician's opinion "more or less weight depending upon the extent to

5

which supporting explanations are provided."[42] An ALJ may choose to accept to accept the opinion of a non-treating, non-examining physician over the opinion of a treating physician so long as there is medical evidence in the record contradicting the treating physician's opinion.[43]

When conducting an assessment of contradictory medical evidence, the ALJ "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based..."[44] The ALJ should provide an "expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."[45] While the ALJ is "required to set forth the reasons for his [or her] decision," these reasons need not be exhaustive.[46] Rather, the ALJ must do more than make broad conclusions without citing factual support in the record, or draw conclusions based solely on vague explanations without citations to the record.[47]

ALJ McCafferty described multiple reasons for assigning little weight to Dr. Liebenberg's opinion as a treating physician. The ALJ found the record did not support Dr. Liebenberg's opinion Ms. Mansfield's physical condition prohibits her from working.[48] In an October 18, 2010 medical source statement, Dr. Liebenberg diagnosed Ms. Mansfield with "osteoarthritis of the right knee and medial joint space narrowing" and "pain, limited range of motion."[49] Dr. Liebenberg opined Ms. Mansfield would likely miss three or more days of work per month based on her inability to:

- Stand for more than ten minutes at a time or a total of two hours during an eight hour work day;
- Walk more than one city block at a time without stopping;
- Sit for more than forty-five minutes at a time or a total of two hours during an eight hour work day;
- Lift and carry more than 20 pounds on an occasional basis;
- Bend or twist at the waist.[50]

6

Ms. Mansfield argues if the ALJ had given Dr. Liebenberg's report its proper weight, the ALJ would have determined Ms. Mansfield is disabled and granted her application.[51] We disagree, as nowhere in his report does Dr. Liebenberg actually state Ms. Mansfield cannot work or is disabled.[52]

Ms. Mansfield argues ALJ McCafferty "fail[ed] to evaluate" several pieces of evidence which she believes support Dr. Liebenberg's opinion concerning her alleged inability to work.[53] Ms. Mansfield points to four diagnostic studies conducted between April 2009 and October 2010 she argues are consistent with Dr. Liebenberg's opinion.[54] Ms. Mansfield argues these diagnostic studies, especially the last, support her position, claiming the "ALJ made no effort to explain why these studies were in any way inconsistent with Dr. Liebenberg's opinion."[55] We disagree.

In her September 26, 2014 decision, ALJ McCafferty gave little weight to Dr. Liebenberg's opinion concerning Ms. Mansfield's knees because:

> "while based on a treatment relationship, the significant limitations assessed are inconsistent with the medical records. Specifically, the treatment records consistently document on [sic] mild to moderate positive findings on diagnostic imaging studies with ... full range of motion in the right knee, stable knee joint and ligaments, no effusion, negative straight leg raises, antalgic gait, and intact strength, sensation, and reflexes."[56]

Ms. Mansfield argues on several fronts challenging the ALJ's decision to give little weight to Dr. Liebenberg's opinion. First, Ms. Mansfield points to an x-ray of her right knee taken on April 30, 2009 showing "tiny osteophytes in the medial and the lateral compartments with mild medial joint space narrowing."[57] However, the same report continues: "[i]mpressions: mild osteoarthritis without change from prior study."[58] "No joint effusion is seen."[59]

Second, Ms. Mansfield cites a July 11, 2009 magnetic resonance imaging report (MRI) showing "thinning of the patellar cartilage along the lateral facet with mild underlying marrow edema," accompanied by "tiny subchondral cysts... in the region of the trochlea."[60] Once again,

7

the report continues: "no bone contusion, fracture, or dislocation is identified."[61] The "medial and lateral menisci are normal in configuration and signal intensity without evidence of tear."[62] Dr. Angela Angeles, Ms. Mansfield's primary care physician examined the report, concluding, despite the thinning patellar cartilage, her impression concerned only "moderate changes of tricompartmental osteoarthritis."[63]

Third, Ms. Mansfield presents an April 2, 2010 x-ray report[64] reviewed by Dr. Jack Schilling on July 19, 2010.[65] She argues this report shows "mild narrowing of the lateral compartment and moderate narrowing of the medial and patellofemoral compartments with osteophytes seen in all three compartments."[66] But, the same x-ray report shows only "mild interval progression of [Ms. Mansfield's] osteoarthritis since 2009."[67] In his July 19, 2010 report, Dr. Schilling noted "moderate to advanced medial joint space narrowing with some moderate patellofemoral changes as well."[68] Dr. Schilling also continued, finding "her ligamentous examination is stable. She has no effusion of the knee. Her extensor mechanism is intact. Her range of motion is 0 to 125 degrees."[69] Dr. Schilling suggested Ms. Mansfield undergo a lidocaine injection in her right knee, a procedure performed the same day, which Dr. Schilling noted, "she tolerated well."[70]

Lastly, Ms. Mansfield presents an October 7, 2010 MRI report of her right knee,[71] detailing "mild medial and lateral osteophyte formation," with considerable degenerative change with loss of articular cartilage at the patellofemoral articulation."[72] The MRI also notes "subchondral cysts on both sides of the joint space, especially the lateral aspect of the patellofemoral articulation," and "mild patellar subluxation."[73] The impressions of the MRI report are "considerable patellofemoral arteritis with mild patellar subluxation."[74]

8

Ms. Mansfield's cites to the record do not support a claim she can stand for only ten minutes at a time, sit for only forty-five minutes at a time, must raise her leg every hour, or walk less than a city block without stopping as Dr. Liebenberg opined.[75] Dr. Liebenberg listed Ms. Mansfield prognosis as "fair."[76] As ALJ McCafferty noted, the most severe diagnosis in any of the reports Ms. Mansfield cites is osteoarthritis of the right knee, which the April 30, 2009 report called "mild," the July 11, 2009 report described as "moderate," and the October 7, 2010 report called "considerable."[77] Dr. Liebenberg opined in the form of a "fill-in-the-blank" and "checkbox" report.[78] "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."[79]

ALJ McCafferty considered evidence presently ignored by Ms. Mansfield. For example, the ALJ evaluated a December 27, 2007 x-ray report of Ms. Mansfield's right knee by Dr. Liebenberg admitting "she does not have deformity or instability," "she has full range of motion," and noting "x-rays of the knees were taken today and they are normal."[80] The ALJ described both Ms. Mansfield's full range of motion and stable knee joint, and ligaments in her decision as reasons for giving Dr. Liebenberg's opinion less weight.[81] ALJ McCafferty also cited Ms. Mansfield's lack of effusion Dr. Liebenberg noted in his April 2009 report,[82] as well as an antalgic gait described by Dr. Deepak Mehrota on November 12, 2010.[83]

ALJ McCafferty also notes the arthroscopic surgery Dr. Schilling performed on Ms. Mansfield's right knee in February 2011.[84] As the ALJ found, Dr. Schilling noted Ms. Mansfield responded "reasonably well,"[85] indicating "no concerns or complaints,"[86] and did not follow up with Dr. Schilling for over a year in June 2012. In a report documenting the June 2012 visit, as the ALJ noted, Dr. Schilling noted her intact extensor mechanism along with a full range of motion, no effusion, and intact motor and sensory examinations.[87] Improvement in Ms.

.

Mansfield's condition continued in June, 2014 when she visited Dr. Eric Williams.[88] ALJ McCafferty evaluated Dr. Williams' report, which describes Ms. Mansfield as able to "ambulate with a cane," and lists her as in "no acute distress."[89] Further, Dr. Williams notes Ms. Mansfield got "up on the exam table without difficulty," had negative calf tenderness, symmetric sensation and reflexes, and negative leg raises bilaterally.[90]

Based on her detailed review of the objective medical evidence, ALJ McCafferty found Dr. Liebenberg's opinion unsupported by the record and afforded it limited weight. She fully considered conflicting evidence. She explained her several reasons for affording limited weight to Dr. Liebenberg. We find substantial evidence to support the ALJ's findings relating to the weight given to medical evidence and Dr. Liebenberg's opinions as a treating physician.

## B. ALJ McCafferty properly afforded little weight to consultative examiner Dr. Harris Ross' opinion.

Ms. Mansfield objects to ALJ McCafferty's decision to afford limited weight to the medical opinion of consultative examiner Dr. Harris Ross. Ms. Mansfield argues ALJ McCafferty's decision to grant Dr. Ross' opinion little weight constitutes legal error.[91]

An ALJ is not bound by the opinions of a non-treating physician in making a disability determination as they are afforded less weight than those of a treating physician.[92] A consultative examiner is considered a non-treating medical source.[93] Ms. Mansfield acknowledges the opinion of a consulting physician like Dr. Ross opinion is entitled to less weight than the opinion of a treating physician, but argues because Dr. Ross' opinion mirrors Dr. Liebenberg's opinion, it is entitled to greater weight.[94] We disagree. The ALJ is entitled to make determinations as to the weight of a physician's opinion based on its consistency with other medical evidence.[95]

Ms. Mansfield saw Dr. Ross on July 12, 2011 at the request of the Social Security Administration.[96] She claims ALJ McCafferty improperly ignored Dr. Ross' opinion she has the inability to lift more than ten pounds occasionally, stand or walk more than one hour per eight-hour work day, or sit for more than three hours per eight-hour work day.[97] Ms. Mansfield claims Dr. Ross' opinion is "well supported by positive clinical findings."[98]

Dr. Ross described her symptoms witnessed during Ms. Mansfield's examination as "some grading and clicking" in the right knee, which he listed as "quite tender."[99] Ms. Mansfield argues Dr. Ross noted the limited range of motion in her "lumbar spine which she could forward bend to 45 degrees" and noted the "positive straight leg raising bilaterally."[100] Ms. Mansfield also argues Dr. Ross took note "left ribcage is tender upon palpitation."[101] Based on these observations, Dr. Ross opined Ms. Mansfield could not stand/walk for more than one hour and could not sit for more than three hours in an eight-hour day.[102] Ms. Mansfield claims this information would have rendered her disabled had the ALJ given it the proper weight.[103]

As she did in evaluating Dr. Liebenberg's "check-box" form, ALJ McCafferty detailed several thoughtful reasons for according little weight to Dr. Ross' opinions. The ALJ found Ms. Mansfield walked unassisted with an antalgic gait.[104] Dr. Ross noted Ms. Mansfield possessed a normal range of motion in her cervical spine and hips with only slight reduction in the bending of her lumbar spine.[105] Her shoulders and elbows demonstrated a normal range of motion.[106] Her knee flexion reached 110 degrees.[107] Similar to Dr. Liebenberg, Dr. Ross merely filled in a "check-box" form concerning Ms. Mansfield's ability to stand and sit.[108] While this form provided space for Dr. Ross to explain and support Ms. Mansfield's limitations, he did not do so, leaving the "comment" sections blank.[109] These "check box" findings, wrote ALJ McCafferty,

11

do not support "[Dr. Ross'] assessment of severe exertional and postural limitations" exhibited by "the minimal positive findings noted on examination."[110]

ALJ McCafferty also evaluated conflicting evidence. For example, she evaluated the February 16, 2009 assessment of Dr. Barry Marks.[111] After conducting various physical tests, Dr. Marks concluded Ms. Mansfield had a normal range of motion in both knees and in both her cervical and lumbar spine.[112] As ALJ McCafferty found, Dr. Marks opined Ms. Mansfield can carry up to twenty-five pounds and lift up to fifty pounds on an occasional basis.[113] The ALJ also relied upon Dr. Marks' opinion Ms. Mansfield has the ability to stand for "two to four hours" and sit "without limitation" during an eight-hour work day.[114] For these reasons, ALJ McCafferty gave great weight to Dr. Marks' opinion, finding "his assessment of minimal physical limitations is consistent with his findings on clinical examination, which include generally intact range of motion and normal reflexes, sensation, and motor power."[115]

ALJ McCafferty also evaluated the opinion of the state agency medical consultant Dr. Gerald Gryczka.[116] Although Dr. Gryczka did not personally examine Ms. Mansfield, he reviewed her records and opined she could "frequently lift and/or carry up to 25 pounds" and "occasionally lift and/or carry up to 50 pounds," stand and/or walk "for at least 2 hours in an 8-hour workday," and sit "about 6 hours in an 8-hour workday."[117] Relying on Dr. Gryczka's opinion, ALJ McCafferty found Ms. Mansfield receives "only routine and conservative treatment, no use of an assistive device or narcotic pain medication, some reports of pain improvement with medication, and [Ms. Mansfield's] reports of ongoing independent daily activities."[118]

Based on her detailed review of the objective medical evidence, ALJ McCafferty found Dr. Ross' opinion unsupported by the record and afforded it limited weight. We find substantial

evidence to support the ALJ's findings relating to the weight given to medical evidence and Dr. Ross' opinions as a consultative examiner.

## C. ALJ McCafferty did not err in determining Ms. Mansfield's credibility.

Ms. Mansfield objects to ALJ McCafferty determining the credibility of her subjective claims. Specifically, Ms. Mansfield argues the ALJ simply dismissed her testimony without contrary medical evidence and ignored the testimony of her treating physician validating her claims.[119] Ms. Mansfield is incorrect.

When an ALJ makes a credibility determination concerning a claimant's subjective complaints, The ALJ must consider seven factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage effectiveness, and side effects of any medication the claimant takes to alleviate pain; 5) treatment, other than medication, the claimant receives for relief of pain; 6) any measures other than treatment the claimant uses to relieve pain; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain.[120] The ALJ may reject the claimant's subjective claims but the ALJ's "decision [and] rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations."[121] The ALJ's "rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work."[122]

ALJ McCafferty's findings are supported by substantial evidence. ALJ McCafferty found "[a]fter careful consideration of the evidence… claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms."[123] The ALJ found,

"however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible," based on "the diagnostic imaging reports show[ing] mild to moderate positive findings in the right knee and lumbar spine with minimal degenerative changes over the treatment history and a recent lumbar x-ray that showed no abnormalities."[124]

But ALJ McCafferty also found, "because symptoms may sometimes suggest a greater degree of impairment than can be shown by medical evidence alone," she considered several of the factors listed above to determine Ms. Mansfield's level of impairment.[125]

Examining Ms. Mansfield's daily activities, ALJ McCafferty noted Ms. Mansfield's ability to engage in "light cleaning," "attend to her personal care, shop for groceries, and care for her teenage son."[126] The ALJ also evaluated Ms. Mansfield's ability to drive, go to church, manage her finances, visit her sister and friend, and help her children with homework.[127] Given this "high level of daily independent functioning," ALJ McCafferty found "a more restrictive functional assessment is not warranted."[128]

Ms. Mansfield argues the ALJ "mischaracterized" many pieces of evidence relating to her daily routine.[129] She testified she wears a wig because she cannot do her own hair,[130] no longer bathes because she cannot stand in the tub,[131] cleans the house while sitting on a chair,[132] cannot take public transportation,[133] and must shop using a scooter.[134] Ms. Mansfield's arguments are exactly the sort of subjective claims the ALJ is entitled to weigh using her observations and other objective evidence.

The ALJ examined the location, duration, and severity of Ms. Mansfield's symptoms. Ms. Mansfield reported widespread pain, instability in her right knee, and pain radiating to her left leg with some occasional numbness and tingling.[135] She also reported widespread pain in her lower back associated with her lumbar spine.[136] ALJ McCafferty found during Ms. Mansfield's

14

last orthopedic visit, she reported no numbness, tingling, or pain radiating to her legs, and reviewed her most recent x-ray showing no significant disk degeneration in her lumbar spine.[137] The reports from Ms. Mansfield's most recent orthopedic visit show no complaints after her June 2012 arthroscopic knee surgery along with a "full range of motion, no effusion, intact extensor mechanism, stable ligaments, and intact motor and sensory examinations."[138] ALJ McCafferty also discussed Ms. Mansfield's mental health, stating there were "no more than moderate symptoms or functional limitations," and noting her "stable condition during her discharge" from treatment.[139] The ALJ also discussed the lack of severe symptoms required to "justify a finding of disability."[140]

ALJ McCafferty also discussed Ms. Mansfield's treatment and medication. The ALJ evaluated Ms. Mansfield's chiropractic care, oral medications, multiple courses of physical therapy, and series of epidural injections, noting the improvements Ms. Mansfield made after chiropractic therapy and the minimal gains made during physical therapy.[141] The ALJ also evaluated Ms. Mansfield's discharge from physical therapy due to poor attendance.[142] Lastly, ALJ McCafferty discussed Ms. Mansfield's medication, stating her improvements with heat treatment, tramadol, and flexeril.[143] The ALJ cited Ms. Mansfield's occasional marijuana and alcohol use.[144] In sum, ALJ McCafferty determined Ms. Mansfield had "achieved some level of symptom improvement and stability through only inconsistent compliance with routine and conservative treatment consisting of arthroscopic surgery, minimal physical therapy, chiropractic adjustments, pain medication, and psychotherapy."[145]

ALJ McCafferty properly found Ms. Mansfield's subjective testimony about her maladies less than credible.

## III. Conclusion

In our accompanying order, we deny Ms. Mansfield's Petition for Review and dismiss her complaint. Having studied the record, we affirm ALJ McCafferty's September 26, 2014 well-reasoned decision finding Ms. Mansfield not disabled. Our review is not based on whether we would arrive at the same conclusion upon our examination of the evidence. We only decide whether ALJ McCafferty's findings are based on substantial evidence derived from the record after considering and describing the weight afforded to the evidence submitted to her. We find ALJ McCafferty did not err in 1) ascribing little weight to the opinion of Dr. Liebenberg, 2) ascribing little weight to the opinion of Dr. Ross, and 3) finding Ms. Mansfield's subjective testimony less than credible.

---

[1] ECF Doc. No. 7, Administrative Record ("R.") at 138, 181 (Ex. 2D, p. 1).

[2] R. at 69, 178, 184-87, 549, 595. Under the first two decisions, the ALJ's found both jobs constituted past relevant work. However, under the 2014 decision under appeal here, the ALJ found only the Certified Nursing Assistant work constituted past relevant work as defined by the regulations. (R. at 473-74).

[3] R. at 461, 761.

[4] *Id.*

[5] R. at 218, 331.

[6] R. at 379, 394, 419, 830-31.

[7] R. at 140-146, 154, 155-56.

[8] R. at 76-80, 81-85.

[9] R. at 31-47.

[10] Civil Action No. 12-3691.

[11] R. at 1082-1099.

16

[12] R. at 624-25, 629, 726-34, 758.

[13] R. at 552-55.

[14] R. at 709.

[15] R. at 643-48.

[16] R. at 556-59, 456-80.

[17] R. at 473-74.

[18] R. at 446-51.

[19] 42 U.S.C. §§ 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000)(citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[20] *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

[21] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir 2004)(quoting *Jesurum v. Sec'y of the United States Dep't of Health and Human Servs.*, 38 F.3d 114, 117 (3d Cir. 1995)).

[22] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[23] *Trinh v. Astrue*, 900 F.Supp.2d 515, 518 (E.D.Pa. 2012); *see also* 42 U.S.C. § 405(g).

[24] *See id.* at 1190-91; *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir 2000).

[25] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

[26] 42 U.S.C. § 423(a)(1)(D) (2015).

[27] 42 U.S.C. § 423(d)(1)(A).

[28] *Id.* § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[29] *See* C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999)

[30] C.F.R. §§404.1502(a)(4), 414.920(a)(4)(i).

[31] *See Id.* (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[32] C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)(mandating finding of non-disability if claimant's impairments are not severe).

[33] *See Id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[34] *Id.*

[35] *See Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[36] *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001).

[37] *Plummer*, 186 F.3d at 428.

[38] R. at 442-44.

[39] *See* 20 C.F.R. § 416.927(c)(2).

[40] *Plummer*, 186 F.3d at 429.

[41] *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).

[42] *Plummer*, 186 F.3d at 429 (*citing Newhouse*, 753 F.2d at 286).

[43] *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011)(citing *Morales v. Apfel*, 225 F.3d 210, 317 (3d Cir. 2000)).

[44] *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)(citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974).

[45] *Cotter*, 642 F.2d at 705.

[46] *Gross v. Comm'r of Soc. Sec.*, 653 Fed.Appx. 116, 120 (3d Cir. 2016)(quoting *Christ the King Manor, Inc. v. Sec'y of Health and Hum. Servs.*, 730 F.3d 291, 305 (3d Cir. 2013)(brackets in original)).

[47] *See Gross*, 653 Fed.Appx., at 120-21.

[48] R. at 472.

[49] R. at 440.

[50] R. at 443-45.

[51] ECF Doc. No. 15, p. 9.

[52] R. at 442-45.

[53] ECF. Doc. No. 15, p. 10.

[54] R. at 394, 400-01, 419, 842.

[55] ECF. Doc. No. 15, p. 11.

[56] R. at 472.

[57] R. at 394.

[58] *Id.*.

[59] *Id.*

[60] R. at 400-01.

[61] R. at 400.

[62] *Id.*

[63] R. at 401.

[64] R. at 395.

[65] R. at 419.

[66] R. at 395.

[67] *Id.*

[68] R. at 419.

[69] R. at 419.

[70] *Id.*

[71] R. at 842.

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] R. at 442-45.

[76] R. at 442.

[77] R. at 394, 400-01, 842.

[78] R. at 970-74.

[79] *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

[80] R. at 331, 472.

[81] R. at 472.

[82] R. at 394.

[83] R. at 472, 906-07.

[84] R. at 471, 997.

[85] R. at 997.

[86] R. at 471.

[87] R. at 471, 997.

[88] R. at 1078.

[89] *Id.*

[90] R. at 1078, 472.

[91] ECF Doc. No 15 p. 16-17.

[92] 20 C.F.R. §§ 404.1527, 416.927; *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[93] 20 C.F.R. § 404.1502.

[94] ECF Doc. No. 15 p. 17.

[95] *See Salerno c. Comm'r. of Soc. Sec.*, 152 Fed.Appx. 208, 209-10 (3d Cir. 2005)(unpublished).

[96] R. at 968-71.

[97] R. at 970, 973.

[98] ECF Doc. No. 15 p. 16-17.

[99] R. at 970.

[100] *Id.*

[101] *Id.*

[102] R. at 973.

[103] ECF Doc. No. 15, p. 17.

[104] R. at 472, 970.

[105] R. at 970.

[106] *Id.*

[107] *Id.*

[108] R. at 973.

[109] R. at 973-74.

[110] R. at 472.

[111] R. at 335-39.

[112] R. at 338, 340.

[113] R. at 338, 465.

[114] R. at 338, 465.

[115] R. at 472.

[116] R. at 472-73.

[117] R. at 345.

[118] R. at 472-73, 349.

[119] ECF. Doc. No. 15, p. 18.

[120] 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)

[121] *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).

[122] *Id.*, citing Social Security Ruling ("S.S.R.") 95–5P.

[123] R. at 470.

[124] *Id.*

[125] *Id.*

[126] R. at 471.

[127] *Id.*

[128] *Id.*

[129] ECF Doc. No. 15 p. 20.

[130] R. at 484-85.

[131] R. at 586.

[132] R. at 570.

[133] R. at 538, 574-75.

[134] R. at 587.

[135] R. at 471.

[136] *Id.*

[137] *Id.*

[138] *Id.*

[139] *Id.*

[140] *Id.*

[141] *Id.*

[142] *Id.*

[143] *Id.*

[144] *Id.*

[145] *Id.*